**RECEIVED**
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE 9 / 10 / 12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JAMES HOUSTON HICKS

DOCKET NO.: 1:10-cv-00020

VERSUS

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

INSURANCE CO. OF CORRECTIONS
CORP. OF AMERICA, ET AL.

REPORT AND RECOMMENDATION

Before the court are plaintiff's motions for summary judgment (Doc. 58, 66, 101, 111) and defendants' motion styled "motion to dismiss and motion for summary judgment" (Doc. 91). All motions are referred to the undersigned for report and recommendation.

A review of the docket reveals that Hicks filed his initial motion for summary judgment on September 8, 2011 (Doc. 58) and supplemental motion on October 14, 2011 (Doc. 66). Both motions were filed *pro se* despite being represented by counsel at the time. Defendants opposition to the motions for summary judgment (Doc. 90) and their motion to dismiss and for summary judgment (Doc. 91) were filed the same day defendants filed an answer, April 12, 2012. Additionally, Hicks filed a motion entitled "motion for judgment on the pleadings re motion for summary judgment" on May 16, 2012 (Doc. 101) and a similar motion on August 29, 2012 (Doc. 111).

This court does not entertain any motions for summary judgment unless and until discovery is complete. It is doubtful that discovery concluded prior to the filing of any of these motions as

defendant appeared for the first time in April, 2012 and a motion to compel by plaintiff remains outstanding as of today's date (Doc. 57).   Accordingly, all motions for summary judgments should be denied as premature.

That said, I will consider that portion of defendants' motion which pertains to dismissal of claims and I will undertake a review of the matter pursuant to 28 U.S.C. §1915(e)(2)(B).

<u>Factual Background</u>

On January 4, 2010, James Houston Hicks ("Hicks"), a *pro se* prisoner at Winn Correctional Center ("WCC")[1] filed, *in forma pauperis*, a civil rights complaint pursuant to 42 U.S.C. §1983 (Doc. 1).   In the complaint, Hicks alleges that he was subjected to routine strip searches which occurred at least two times a day from August 11, 2009 through May, 12 2010, while working in the Prison Enterprises Garment Factory ("P.E. Garment Factory").   Hicks further contends that the strip searches and visual cavity searches[2] were performed in violation of his constitutional rights and the policies and procedures of the Louisiana Department of Public Safety and Corrections ("La. DOC").

On February 26, 2010, Hicks filed an amended complaint  adding

---

[1]   On or about May 12, 2010, Hicks was released from the custody of the Louisiana Department of Public Safety and Corrections(Doc. 21).

[2]   Hicks uses the term cavity searches but what he describes meets the definition of a visual cavity search as set forth by the D.O.C.

additional defendants to the lawsuit and complaining of exposure to unsanitary conditions and diseases during the strip searches (Doc. 11). Specifically, Hicks contends the strip searches were conducted in a small room which was not properly cleaned and was so small that the men would sometimes "touch" each other during the strip searches.

On April 9, 2010 Ross Owen and Jeananne Self enrolled as counsel (Doc. 3 and 15).[3] On April 23, 2010, Hicks moved to file an amended complaint which was denied as he was represented by counsel (Doc. 16 and 17). On May 21, 2010, counsel for Hicks was ordered to review the complaint and proposed amended complaint, dismiss any claims or defendants deemed appropriate and serve the complaint in accordance with Federal Rule of Civil Procedure 4 (Doc. 23). Thus, an amended complaint was filed on September 22, 2010 (Doc. 37).

In the second amended complaint, Hicks set forth the named defendants and clarified the claims set forth against them. Hicks claims that each of the named defendants, Corrections Corporation of America ("CCA"), Warden Timothy Wilkinson ("Wilkinson"), Dr. Alfonzo Pacheco ("Pacheco"), Pat Thomas ("Thomas"), Asst. Warden Jay Tim Morgan ("Morgan"), Warden Stevens ("Stevens"), Virgil Lucas ("Lucas"), Tommy Glover ("Glover"), Becky Dugan ("Dugan"), Mr.

---

[3]   Though Hicks sought to terminate his representation by counsel as early as July, 2011, Owen and Self continued to represent Hicks through December 13, 2011.

3

Sanders ("Sanders"), Mr. Johnson ("Johnson"), Sgt. Peter Flowers ("Flowers"), Mr. Mack ("Mack"), Asst. Warden Angie Martin ("Martin") and Mildred Melton ("Melton"), either participated in or had personal knowledge of the illegal strip searches but were deliberately indifferent to the violation of his constitutional rights under the fourth, eighth and fourteenth amendments. He alleges that all defendants acted in bad faith.

Specifically, Hicks contends CCA, Wilkinson, Morgan, Martin, Lucas, Stevens and Glover are sued in the official and individual capacities for ordering and/or allowing the strip searches to be conducted. Thomas and Pacheco are alleged to have known of the unsanitary conditions of the area where strip searches were conducted as well as the unlawfulness of the searches in that they were being conducted by non-medical personnel. Flowers, Sanders, Johnson and Mac are alleged to have conducted and/or participated in the illegal searches and visual body cavity searches in the unsanitary conditions and acting with deliberate indifference to the violation of Hicks' constitutional rights. Melton and Dugan are alleged to have viewed the illegal strip searches and intentionally subjecting Hicks to humiliation.

Hicks contends that as a result of these routine searches, he developed serious mental health problems, including anxiety and nightmares, which persist today. Hicks seeks compensatory and punitive damages, costs and attorneys fees. He also seeks an

4

injunction requiring WCC to cease strip searches of inmates working in the P.E. Garment Factory.

Law and Analysis

1.  Official Capacity Claims

Hicks has sued Wilkinson, Thomas, Pacheco, Morgan, Stevens, Lucas, Glover, Dugan, Sanders, Johnson, Flowers, Mack, Martin and Melton in their official and individual capacities.  The Eleventh Amendment bars Section 1983 suits for monetary damages against a state official in his/her official capacity.  See, Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002); Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 609 n.10 (2001).  In addition, "neither a State nor its officials acting in their official capacities are 'persons' under 42 U.S.C. §1983."  Will v. Michigan Dep't State Police, 491 U.S. 58, 71 (1989).

Although WCC is operated by a private corporation, CCA, it is operated for the safety and welfare of the people of the state, as opposed to a local interest.  See, Citrano v. Allen Correctional Center, 891 F.Supp. 312 (W.D.La. 1995)(citing LSA R.S. 39:1800).  Thus, suits against WCC employees, in their official capacities, are barred by the Eleventh Amendment.  Thus, claims against Wilkinson, Thomas, Pacheco, Morgan, Stevens, Lucas, Glover, Dugan, Sanders, Johnson, Flowers, Mack, Martin and Melton in their official capacities should be dismissed.

2.   Injunctive Relief

Hicks requests injunctive relief; however, as he is no longer incarcerated at WCC, his claims for injunctive relief are moot. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001)(citing Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078, 1081 (5th Cir. 1991).  In order for Hicks claims for injunctive relief to remain viable, he must establish a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at WCC.  Murphy v. Hunt, 455 U.S. 478, 482 (1982).  No such allegation nor evidence was submitted by Hicks.  Accordingly, his claim for injunctive relief should be denied.

3.   Strip Searches

Hicks makes several assertions as to why the strip searches performed at WCC were unconstitutional.  He claims that both strip searches and visual cavity searches were conducted without probable cause, by non-medical personnel, in unsanitary conditions which promoted the spread of communicable diseases, in groups of inmates and before female guards.

A. Probable Cause

Probable cause is not required to conduct strip searches, including visual strip searches, on convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 558-59 (1979)(finding visual strip searches conducted without probably cause were not unreasonable under the Fourth Amendment).  The penological interest, as the Supreme Court

6

and Fifth Circuit have explained, is the maintenance of security and the location of the contraband. See v. Scott, 276 F.3d 736, 743 (5th Cir. 2002). Accordingly, this claim should be dismissed.

B. Unsanitary Conditions

In order to prevail on a conditions of confinement claim, a prisoner must allege facts which suggest that the prison officials' conduct resulted in the plaintiff being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001). The "risk must be of such a level that today's society would not tolerate it." Id. Additionally, he must plead facts which establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of the deprivations but nevertheless showed "deliberate indifference" to the plaintiff's "health of safety". Id.

To show "deliberate indifference", the plaintiff must allege facts (and not conclusory allegations) which demonstrate that the defendants knew of but disregarded a substantial risk of serious harm to his health. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Further, he must plead facts which establish that the defendants: (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential

7

for harm existed.   Id.   Failure to eliminate a risk which one should have perceived but, in fact, did not perceive does not amount to deliberate indifference.   Id.

Hicks claims that he was strip searched in an unsanitary room with other prisoners who were diagnosed with diseases, such as HIV and hepatitis.   Hicks further alleges that defendants either ordered, participated in or knew of the strip searches being conducted in an unsanitary manner. However, no further allegations are asserted.  Not one defendant is alleged to have known of a risk of harm or to have deliberately disregarded the known risk. Without more, Hicks' claim cannot proceed against the individual defendants.

To the extent that Hicks seeks to hold CCA liable for his exposure to unsanitary conditions and diseases, he must set forth a policy or custom which allowed for the hazardous condition.   No such policy or custom is alleged.  Instead, Hicks asserts a bald allegation that the defendants ordered, knew of and/or disregarded the fact strip searches were conducted under unsanitary conditions. Thus, this claim against CCA should be dismissed for failure to state a claim.

Finally, to the extent Hicks seeks to assert a claim for vicarious liability, his claim also fails.  Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates actions.   Supervisory

officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Thompkins, 828 F.2d at 303. Further, just as a municipal corporation is not vicariously liable for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.[4]

C. Conducted by Non-Medical Personnel

Hicks further contends the searches were unconstitutional and in violation of La DOC policies and procedures because they were not conducted by medical personnel. First, there is no

_____

[4] Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir.2003), the Fifth Circuit extended municipal corporate liability under § 1983 to include private prison-management corporations and their employees. "We agree with the Sixth Circuit and with those district courts that have found that private prison management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury." Id. In reaching its holding, the court concluded, "[c]learly, confinement of wrongdoers-though sometimes delegated to private entities is a fundamentally governmental function." Id. The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability. See, Phillips v. Corrections Corp. of America, No. 02-766, 2006 WL 1308142 at * 3 (W.D.La. May 10, 2006); see also, Monell v. Dept. of Social Services, 436 U.S. 658, 694, (1978).

constitutional right to have medical personnel conduct strip searches. Second, the evidence produced by Hicks does not support his position that the strip searches should have been performed by medical personnel.

Hicks presents what purports to be a copy of Department Regulation No. C-02-003, Searches of Offenders, as set forth on November 12, 2008 (Doc. 11, p. 3-8). This document states that strip searches and visual body cavity searches are conducted by officers of the same sex as the offender (Doc. 11, p. 5). However, a body cavity search must be conducted by "trained health care personnel only." (Id.). Though Hicks wrote that "cavity searches" were conducted, there are no allegations in any of the complaints or motions which support the finding that his body cavity was ever searched. Rather, visual body cavity searches were conducted on occasion. As neither strip searches nor body cavity searches were required to be performed by medical personnel, this claim lacks merit and should be dismissed.

### Conclusion

In light of the foregoing,

**IT IS RECOMMENDED** that all motions for summary judgment (Doc. 58, 66, 91, 101, 111) be DENIED as premature.

**IT IS FURTHER RECOMMENDED** that all official capacity claims against Wilkinson, Thomas, Pacheco, Morgan, Stevens, Lucas, Glover, Dugan, Sanders, Johnson, Flowers, Mac, Martin and Melton be **DENIED**

and DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that all claims for injunctive relief be **DENIED and DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that all claims against all defendants for conducting or allowing strip searches to be conducted without probable cause be **DENIED and DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that all claims against all defendants for conducting or allowing strip searches to be conducted by non-medical personnel be **DENIED and DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that all claims against all defendants for conducting or allowing strip searches to be conducted in unsanitary conditions be **DENIED and DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that Hicks' only remaining claim, that strip searches were conducted in view of others in violation of the Fourth Amendment, go forward.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the  proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** Douglass v. United Services Automobile Association, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 10th day of September, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE