RECEIVED
IN ALEXANDRIA, LA.

JUN 2 2014

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JAMES HOUSTON HICKS

DOCKET NO.: 1:10-cv-00020

VERSUS

JUDGE JAMES T. TRIMBLE, JR.
MAGISTRATE JUDGE JAMES D. KIRK

INSURANCE CO. OF CORRECTIONS
    CORP. OF AMERICA, ET AL.

REPORT AND RECOMMENDATION

Before the court is defendants' motion to dismiss[1] and for summary judgment (Doc. 164) which plaintiff, James Houston Hicks ("Hicks"), opposes (Doc. 167). The motion is referred to the undersigned for report and recommendation.

Factual Background

On January 4, 2010, James Houston Hicks ("Hicks"), a *pro se* prisoner at Winn Correctional Center ("WCC")[2] filed, *in forma pauperis*, a civil rights complaint pursuant to 42 U.S.C. §1983 (Doc. 1). In the complaint, Hicks alleged he, as a prison employee of Prison Enterprises Garment Factory ("P.E. Garment Factory"), was subjected to routine strip searches and "cavity searches"[3] which

---

[1] Though the motion is entitled "motion to dismiss" there are no arguments within the memorandum which address Hicks' failure to state a claim.

[2] On or about May 12, 2010, Hicks was released from the custody of the Louisiana Department of Public Safety and Corrections(Doc. 21).

[3] Hicks uses the term cavity searches but what he describes meets the definition of a visual cavity search as set forth by the Department of Corrections.

occurred two to three times a day from August 11, 2009 through May, 12 2010. Hicks further alleged the searches were performed in violation of his constitutional rights and the policies and procedures of the Louisiana Department of Public Safety and Corrections ("La. DOC").

On February 26, 2010, Hicks filed an amended complaint adding additional defendants to the lawsuit and complaining of exposure to unsanitary conditions and diseases during the strip searches (Doc. 11). A second amended complaint was filed on September 22, 2010 (Doc. 37) which specified each named defendants and clarified the claims set forth against them. Hicks alleged that each of the named defendants, Corrections Corporation of America ("CCA"), Warden Timothy Wilkinson ("Wilkinson"), Dr. Alfonzo Pacheco ("Pacheco"), Pat Thomas ("Thomas"), Asst. Warden Jay Tim Morgan ("Morgan"), Warden Stevens ("Stevens"), Virgil Lucas ("Lucas"), Tommy Glover ("Glover"), Becky Dugan ("Dugan"), Mr. Sanders ("Sanders"), Mr. Johnson ("Johnson"), Sgt. Peter Flowers ("Flowers"), Mr. Mack ("Mack"), Asst. Warden Angie Martin ("Martin") and Mildred Melton ("Melton"), either participated in or had personal knowledge of the illegal strip searches but were deliberately indifferent to the violation of his constitutional rights under the fourth, eighth and fourteenth amendments. He alleged all of the defendants acted in bad faith.

Hicks sued CCA, Wilkinson, Morgan, Martin, Lucas, Stevens and

Glover in their official and individual capacities for ordering and/or allowing the strip searches to be conducted. Thomas and Pacheco were alleged to have known of the unsanitary conditions of the area where strip searches were conducted and that they were conducted by non-medical personnel. Flowers, Sanders, Johnson and Mac were alleged to have conducted and/or participated in the searches in the unsanitary conditions and acted with deliberate indifference to the violation of Hicks' constitutional rights. Melton and Dugan were alleged to have viewed the illegal strip searches and to have humiliated him.

Hicks claimed he developed serious mental health problems, including anxiety and nightmares as a result of the strip searches. He entered a prayer for compensatory and punitive damages, costs and attorneys fees and he sought an injunction requiring WCC to cease strip searches of inmates working in the P.E. Garment Factory.

On September 10, 2012, I issued a Report and Recommendation regarding defendants' first motion to dismiss and for summary judgment(Doc. 116) which Judge Trimble adopted on November 6, 2012 (Doc. 141). All but one of Hicks' claims were dismissed. The surviving claim alleged violation of his Fourth Amendment rights as he was subjected to humiliating strip searches conducted in view of other prisoners and female guards.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure was amended, effective December 1, 2010, to provide "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A dispute regarding a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Washburn v. Harvey, 504 F.3d 505, 508 (2007).

Additionally, Local Rule 56.2W provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

---

[4] The comments to the amendment indicate the standard for granting summary-judgment remains unchanged.

record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See Id. at 325; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Id.

## Law and Analysis

The defendants correctly state strip searches performed before female prison guards are not unconstitutional *per se*. See Letcher v. Turner, 968 F.2d 508, 510 (5th Cir.1992); Elliott v. Lynn, 38 F.3d 188, 190-92 (5th Cir.1994); Oliver v. Scott, 276 F.3d 736, 747(5th Cir. 2002); Tasby v. Lynaugh, 123 F. App'x 614, 615 (5th Cir.2005). However, the Fourth Amendment "requires that 'searches or seizures conducted on prisoners must be reasonable under all the

facts and circumstances in which they are performed.'" Elliott v. Lynn, 38 F.3d 188, 191, quoting United States v. Lilly, 576 F.2d 1240, 1244 (5th Cir.1978); See also Moore v. Carwell, 168 F.3d 234, 236-37 (5th Cir.1999). In each case, one must balance the "needs of the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it and the place in which it was conducted." Id.

The Fifth Circuit has interpreted the "statement of reasonableness 'as striking a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'" Elliott, 38 F.3d at 191 (5th Cir.1994)(quoting Watt v. City of Richardson Police Dep't., 849 F.2d 195, 196 (5th Cir.1988).[5]

Hicks contends he was searched in a "degrading, harassing and humiliating" manner. He states the guards conducted strip searches and visual cavity searches two to three times a day in view of other inmates and female guards. He further states that the room

---

[5] The Fifth Circuit has reversed and remanded the dismissal of cases in which a determination of reasonableness was not made. See Gipson v. Wilkinson, 2014 WL 142502 (5th Cir.4/15/2014); Scheidel v. Secretary of Public Safety and Corrections, 2014 WL 1379199 (5th Cir.4/09/2014); Moore v. Carwell, 168 F.3d 234 (5th Cir.1999) and Hutchins v. McDaniels, 512 F.3d 193 (5th Cir. 2007).

6

was intentionally over crowded so the inmates would have no choice but to bump into one another while naked. See McCreary v. Richardson, 738 F.3d 651, 656 (5th Cir.2013), citing Turner v. Safley, 482 U.S. 78, 89 (1987).

In their memorandum, the defendants argue the searches were reasonable because they were conducted to ensure prison safety. "The garment factory contains scissors, needles and other items that may be used as dangerous weapons." Defendants further argue the searches are reasonable because they are conducted in an uncrowded, segregated room without females present and the inmates were neither touched nor body cavity searched. In support, the defendants provide affidavits of two Correctional Officers who worked in the P.E. Garment Factory during the time at issue.

The affidavits have a fill in the blank section at the top for the affiant's age, the year his/her employment commenced, when he/she began working in the P.E. Garment Factory and his/her current classification. Thereafter, the affidavits are identical and state that the affiant is "familiar" with the strip search procedure which is set forth below. The affidavits bear the signatures of Carol Melton and Joshua Clark but neither contains a provision stating the statements are true and correct, made under penalty of perjury or are otherwise sworn. Because the affidavits do not appear to be based on personal knowledge and are not sworn statements, they do not constitute competent summary judgment

evidence and cannot be considered by the court.

No other evidence is provided so what remains is a argument between the two sides as to whether the searches were performed in a reasonable manner under the circumstances. To resolve this issue, the fact finder must make a determination as to credibility. Such determinations may not be made via summary judgment so the motion should be denied.

**IT IS RECOMMENDED** that the Defendants' Motion to Dismiss and Motion for Summary Judgment (Doc. 164) be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**

<u>**Douglass v. United Services Automobile Association**</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana on this 31st day of May, 2014.

```
                          _____
                               James D. Kirk
                          UNITED STATES MAGISTRATE JUDGE
```