U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN - 9 2015

TONY R. MOORE, CLERK
BY _____ /MB _____
              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES HOUSTON HICKS | ACIVIL ACTION NO. 10-020 |
| VERSUS | JUDGE TRIMBLE |
| CORRECTIONS CORP. OF AMERICA, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

The above-captioned civil rights suit was tried before the undersigned April 6 – 7, 2015. Following the trial, the court issued an Order instructing the parties to submit post-trial briefs for consideration.[1] Having received all such briefs, the court finds the issues ripe for decision.

### I. PLAINTIFF'S CLAIMS

Plaintiff, James Houston Hicks, was among a group of ten (10) original plaintiffs to file suit against Corrections Corporation of America, Inc. ("CCA"), the Insurance Company of Corrections Corporation of America, LLC, Ronald Honeycutt, Mr. Langley, Ms. Becky Dugan, Ms. Carol Melton, Mr. Bobby Sanders, Sgt. Flowers, Mr. James LeBlanc, Warden Tim Wilkinson, Warden Jay Morgan, Mr. McGloughlin, Chief Virgil Lucas, Assistant Chief Tommy Glover and Mr. Johnny Smith (collectively "Defendants").[2] The ten (10) plaintiffs' claims were severed into individual civil suits.[3]

Plaintiff's complaint alleges that he was subjected to strip searches in violation of his Fourth Amendment rights while incarcerated at Winn Correctional Center ("Winn"). Winn is located in Winnfield, Louisiana and is operated by Corrections Corporation of America, Inc.

---

[1] R. 188.
[2] R. 1.
[3] R. 87.

1

("CCA") under a contract between CCA and the Louisiana Department of Corrections.[4] Plaintiff's suit alleges, more specifically, that he was assigned to work at the Prison Enterprises Garment Center ("PE Garment Factory") and that, because of that duty status, he was subjected to at least two (2) strip searches per day under conditions which failed to meet the requirements imposed by applicable DOC regulation and also constituted an unreasonable search and seizure under the U.S. Constitution. Defendants admit that strip searches are conducted at the PE Garment Factory, but denied violation of Plaintiff's constitutional rights under the Fourth Amendment by such practice.

We review the evidence presented below.

## II. ANALYSIS

### *Elements of a Fourth Amendment Strip Search Claim*

The Fourth Amendment to the Constitution of the United States, made applicable to the States via the Fourteenth Amendment, protects citizens from unreasonable searches and seizures.[5] While prisoners do not forfeit the whole of their civil rights upon incarceration, the United States Supreme Court and the United States Fifth Circuit Court of Appeals have acknowledged that prisoners retain only a small vestige of their Fourth Amendment rights as incarcerated persons.[6] This is so because the individual right of the prisoner must give way to the legitimate goals and policies of our penal system.[7] Among the most important considerations in any penal institution are the goals of safety and security.[8]

---

[4] R. 189 at p. 1, n. 1.
[5] U.S. Const. amend. IV; U.S. v. Paige, 136 F.3d 1012 (5th Cir. 1998) citing Mapp v. Ohio, 367 U.S. 643 (1961).
[6] Turner v. Safley, 482 U.S. 78 (1987); Hudson v. Palmer, 468 U.S. 517 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002); Letcher v. Turner, 968 F.2d 508 (5th Cir. 1992).
[7] Bell, 441 U.S. 520 at 545-46 citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119 (1977) and Pell v. Procunier, 417 U.S. 817 (1974).
[8] Id.

Strip searches are not *per se* unconstitutional, but must be "reasonably related to legitimate penological interests."[9] The court will defer to the judgment of correctional officials unless the record contains "substantial evidence" that the policy at issue is unnecessary or unjustified in response to concerns of jail security.[10] In assessing whether or not the policy at issue is "reasonable" under the standard, the court should consider the following factors:

(1) whether or not the regulation or, as here, policy, has a "valid, rational" connection to the governmental interest put forth to justify it;

(2) whether the inmate has alternative methods for exercising the right asserted;

(3) what impact the accommodation would have on other inmates or prison staff; and

(4) the existence of easy, rather than hard, alternatives demonstrated by the plaintiff, which show that the policy is an exaggerated response by prison officials.[11]

*Evidence at Trial*

The court finds that the evidence introduced at trial overwhelmingly supports Defendants' contention that the strip searches conducted at the garment factory were "reasonably related to legitimate penolgical interests" at Winn. Testimony from Theodore Johnson, Bobby Sanders, former Warden Wilkinson, Carol Melton, and Warden Morgan explained several of the factors that weigh in favor of heightened security precautions in the garment factory: (1) the presence of and inmate access to items that may be used as or made into weapons, such as scissors, needles and sewing machine parts; (2) the regular contact between inmates assigned to

---

[9] Turner, 482 U.S. at 89.
[10] Florence v. Bd. of Chosen Freeholders, 566 U.S. ___, 132 S.Ct. 1510, 1513-14 (2012).
[11] Turner, 482 at 89-90.

the garment factory and persons arriving from outside the prison, such as trustees and civilian truck drivers; and (3) the need to prevent theft of items made in the garment factory.[12]

Though Plaintiff argued that the presence of the metal detector at the entrance to the garment factory made Winn's use of multiple strip searches an unreasonable response to security concerns, the court finds that substantial evidence at trial was offered to show the practical limitations of the metal detector. First, testimony by many witnesses, including Carol Melton and Wardens Wilkinson and Morgan, affirms that the metal detector was not reliable because it would sometimes be set off by nothing more than the wind.[13] Next, these witnesses testified that the metal detector would not alert to the presence of wood, plexiglass or plastic, all of which may be sharpened into a weapon.[14] Similarly, a metal detector will not detect the presence of contraband such as stolen items from the factory, drugs, cell phones or money. Given the opportunity for contact with those from outside Winn presented within the garment factory, the court finds these concerns compelling.

To the extent that Plaintiff alleges a constitutional violation arising out of the presence of female prison employees in the general vicinity of the strip search area, we also reject such claim. The testimony at trial established that Ms. Dugan, the plant manager, did not participate in the strip searches and, would "avert her eyes" from the general area of the search room if passing through the area during the times when the searches were being conducted.[15] Ms. Dugan denied looking through the search room window during the strip searches.

---

[12] R. 189 at pp. 4-11.
[13] Id. at p. 9.
[14] Id. at p. 10.
[15] The court notes that the strip search room was established at trial to be an enclosed room separate from the open space of the garment factory sewing floor, featuring two doors and a single window on the wall between factory floor and the search room itself.

Similarly, Ms. Melton, the corrections officer assigned to the garment factory denied participating in any strip searches. Instead, she testified that she was often positioned outside the exit door to the strip search room. Her task was to ensure that inmates did not return to the garment factory floor once they had completed the strip search process. The purpose of her position was to observe the various routes from the search room in order to ensure that all inmates exited the garment factory.

Plaintiff alleges that the presence of these females on the premises is further evidence of a constitutional violation in this case. Plaintiff testified that the desire of his fellow inmates to complete the search process as quickly as possible led to inmates disrobing while waiting in line outside the search room and, after being searched, exiting the search room before being fully clothed. To the extent that Plaintiff bases any claim for constitutional violation on being seen fully or partially disrobed by Ms. Melton, we deny such claim as a matter of law for the following reasons. First, the constitution does not provide a right of privacy as such. Even if such a privacy right did exist, the Fifth Circuit Court of Appeals indicates that it likely would not apply with equal force to incarcerated persons.[16] Second, the preponderance of the evidence presented at trial established that inmates exiting the strip search room were clothed in at least their underwear, which would obviate any privacy right violation. Third, jurisprudence contemplating female correctional officers actually participating in strip searches and/or viewing showers or strip searches has upheld the right of prisons to utilize female prison employees for these purposes, recognizing the legitimate penological interests inherent in equal employment opportunity, as well as the negative logistical impact to prisons presented by gender limitations.[17]

---

[16] Oliver v. Scott, 276 F.3d 736, 744-45 (5th Cir. 2002).
[17] Letcher v. Turner, 968 F.2d 508 (5th Cir. 1992) and cases cited therein.

Plaintiff's post-trial brief focuses, as did a portion of his trial presentation, on the fact that the strip searches at issue were not conducted "in private." Plaintiff points to Louisiana DOC Regulation C-02-003, which provides in pertinent part,

> Strip Search: A visual search of an offender's nude body, conducted by employees of the same sex as the offender. Strip searches shall be conducted in a private place out of the view of others.[18]

Trial testimony among witnesses varied as to how many inmates were strip searched together in the search room. While some witnesses estimated that the inmates were ushered into the search room in groups of approximately six (6), Plaintiff testified that inmates were searched in groups of approximately fifteen (15). Plaintiff complained that the relatively small size of the room, measuring about 30 feet by 12.5 feet, resulted in these inmates bumping into one another while naked. One inmate witness, Elton Martin, testified that inmates were lined up "two by two" and required to disrobe in the hallway and be searched in the open garment factory, rather than in the search room. The court found this testimony, unsupported by any other testimony at trial, including that of the Plaintiff, to be incredible.

As noted by both parties in post-trial briefs, the failure of a prison to follow its own regulation does not, on its own, establish a constitutional violation.[19] Moreover, as above, any privacy right retained by an inmate regarding the manner in which these searches are carried out is minimal and does not prevail in comparison to the serious safety considerations demonstrated by Defendants.

Plaintiff's post-trial brief asserts that "…were it the policy at Winn…to individually strip search [inmates] the [P]laintiff would likely have no basis to complain." Thus, in a sense,

---

[18] Plaintiff's Exhibit 8.
[19] Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009) citing Richardson v. Thornton, 299 Fed. Appx. 461 (5th Cir. 2008), Sandoval v. Fox, 135 Fed. Appx. 691 (5th Cir. 2005).

Plaintiff's brief concedes the necessity of the searches and contests only the manner in which they were carried out. We find, however, that Plaintiff's suggested method is without merit. It would be logistically oppressive for the staff at Winn to usher each inmate into the search room and privately strip search them. Moreover, it would negatively impact the hours available for work in the garment factory, the staff necessary to supervise the inmates awaiting search and the efficiency with which the inmates are able to arrive at lunch and dinner each day. Under the Turner factors listed above, therefore, Plaintiff fails to show that the privacy measure he seeks would not have a negative impact on prison staff and fellow inmates.

We also note that Plaintiff failed to show by a preponderance of the evidence at trial that he lacked any means by which to seek other employment at Winn. Plaintiff testified that then-Warden Wilkinson threatened him and forced him to work in the garment factory. Warden Wilkinson denied making this threat and the court heard testimony from Ms. Dugan and Ms. Melton regarding the protocol for inmates seeking to be "re-classed" or reassigned to other employment at Winn. Taking all of the testimony into account, the court did not find Plaintiff's testimony to be credible regarding his inability to escape employment at the garment factory.

III. CONCLUSION

Having considered the evidence presented at trial in this case, the court finds that Plaintiff failed to establish by a preponderance of the evidence that his Fourth Amendment rights were violated by any strip search procedure at Winn. Specifically, the court finds that the procedures employed by Winn were a rational response to a legitimate security concern and, thus, reasonably related to legitimate penological interests. The court further finds that Plaintiff failed to show that other means exist by which the strip searches might have been conducted in order to lessen any alleged constitutional violation. We reiterate our strong rejection of Plaintiff's

assertion that Defendants' failure to strip search each inmate individually, in private, out of the view of any other person as allegedly mandated by Louisiana DOC Regulation C-02-003 resulted in any constitutional violation by Defendants and note, again, that we find no constitutional violation in any failure by Defendants to adhere to such regulation, given Plaintiff's diminished privacy right.

    The court will issue a judgment dismissing all claims against Defendants in conformity with these findings.

**Alexandria, Louisiana**
**June 9, 2015**

                                      JAMES T. TRIMBLE, JR.
                                      UNITED STATES DISTRICT JUDGE